UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Civil Action #: 6:18-cv-6657

CATHERINE E. KUBITZ,

    Plaintiff,

vs.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA
and ROCHESTER INSTITUTE OF TECHNOLOGY,

    Defendants.

**VERIFIED COMPLAINT**



## AS AND FOR A FIRST CAUSE OF ACTION

The Plaintiff, for her **First Cause of Action**, alleges:

1. That the Plaintiff is a resident of the County of Monroe, State of New York, and has been at all times since her benefits under the Rochester Institute of Technology Long Term Disability Plan, were instituted and then terminated. She is a U.S. Citizen with Social Security number ending in 9560, born July 24, 1970.

2. That the Defendant Rochester Institute of Technology (hereinafter "the Company" or "RIT") established a Plan where contributing and covered employees would be eligible for certain employee welfare benefits upon long term disability. That the Defendant Rochester Institute of Technology is stated as employer, fiduciary and also sponsor and agent for service of process and also a sponsor and also Plan Administrator under Group Contract # G-50757-NY, Claim # 12025361, Employer ID # 16-0743140.

3. That at the time the Plaintiff became eligible and commenced receipt as a Contract Holder of benefits under the Plan, thereby vesting per Plaintiff to a "no change in terms" entitlement, the claims administrator also called "plan benefit provided by" in the Summary Plan Description was and is The Prudential

        Insurance Company of America, and that the proper Policy in this Court is that in effect in October of 2014.

4. That the Defendant The Prudential Insurance Company of America as claims service provider and claims administrator, administered the Plan and review claims on behalf of the Defendant RIT and is the entity that ceased paying all benefits to the Plaintiff on or about March 1, 2017, with all reviews and actions taken on its letterhead alone, often under the name "Prudential."

5. That both Defendant Prudential Insurance Company of America and Defendant RIT are domestic corporations that do business in New York State and both are fiduciaries of the Plan.

6. That the Plaintiff, as an employee of RIT, was an eligible employee who applied for and was granted benefits hereunder as of October, 2014 initially for "Short-Term Disability" and then for Long-Term Disability starting on April 15, 2015. Plaintiff was unable to perform the duties of her occupation for which reasonably fitted from October of 2014 until April 15, 2017. Her benefits were ceased as of March 1, 2017, and she is owed 45 days' benefits under the own occupation definition. She was further unable to perform the duties of any gainful occupation for which reasonably fitted after April 15, 2015 to date. This occurred under the "unable to do a gainful occupation that will provide 70% of her former monthly earnings with 12 months of return to work" at any job as of 4/15/17, and continuing.

7. That the Plan is an employee benefit plan as covered by the Employee Retirement Income Security Act of 1974 (hereafter "ERISA"), as to all parties herein, and Plaintiff has timely legal rights of appeal per Section 502(1) of ERISA and the Plan.

8. That as an eligible employee, the Plaintiff is entitled, until age 65 or maximum age, to a monthly income benefit pursuant to pertinent sections of the

    Plan, less appropriate offsets, and that said figure was paid correctly until March 1. 2017, as were life insurance and pension benefits

9. For purposes of the instant litigation, the issue is both whether the Plaintiff, because of injury or sickness or both, is continuously disabled from performing material and substantial duties of her occupation from October 16, 2014, through April 14, 2017, and then from performing essential duties of any reasonable occupation for which she is qualified by education, training or experience and has an earnings ability greater than 70% product of her indexed pre-disability earnings and the benefit percentage. In practical terms, this means a job paying approximately $33,300 a year or greater, a factor Prudential does not even consider, and ignores as being a vital part of its own definition.

10. That Plaintiff has timely filed and completed all administrative appeals and remedies receiving a final administrative denial on September 18, 2017, and a request for reconsideration of final denial on 4/12/18.

11. Plaintiff became an employee of RIT and was a Financial Aid Manager, earning $47,660 per year. Prudential is incorrect that her job, as performed, had a sedentary level of work although her occupation with accommodations can sometimes be done at a sedentary level of work. She ceased employment in October of 2014, because of chronic back pain and failed laminectomy syndrome. She developed further problems and difficulties over the years as she has aged and spinal manipulation, spinal stimulation, physical therapy and medication have been unsuccessful. She is post-**nine** spinal surgeries and, despite massive medications, change in living circumstances, repeated efforts at all types of treatment, including implanted spinal stimulator, is unable, due to overwhelming chronic back and spinal pain and radicular leg pain, to work and earn 70% of her former base gross.

12. Plaintiff, to the advantage of both Defendants under their offset rules, applied for and was found eligible and continues to be eligible under a standard of inability to perform substantial gainful activities and receives monthly Social Security Disability benefits. Although not

        binding on Defendants in the Second Circuit, this federal finding is entitled to consideration and is a further indication of her inability to perform even simple ongoing sedentary work of a full-time nature. It is basically the same definition as Prudential applies.

13. Plaintiff has continued her total disability to date and is under continuous medical care from treating physicians who disable her from being able to do any job, let alone a job at 70% or more of her prior earnings. At no time has the Plaintiff or the Defendants received an opinion by a treating physician, let alone performed an examination, which would indicate that the Plaintiff was capable of performing any type of work on a continuous basis being full-time or perform any type of work including sitting with frequent changes of position because of constant pain and fatigue, medication side effects, dizziness, sleep apnea, attention deficit disorder, depression because of her physical ailments, inability to attend work on more than an occasional day by day basis. In fact, Plaintiff's treating physicians and medical providers are five for five in saying she cannot   Plaintiff has further supplied Defendants with a full and complete sixteen (16) page objective vocational appraisal (Dr. Peter A. Manzi), concluding "She is unable to remain on task during a  work day in any job. She simply cannot work five days a week for 8 hours a day in any occupation or work setting, nor could she work part-time."do any job.

14. That the Defendants have erroneously, improperly and against the preponderance of evidence, ceased Plaintiff's benefits under the Plan, both for 45 days under her own occupation standard and since 4/15/17 under the any occupation standard..

15. That the actions of the Defendants are further arbitrary and capricious and that the Plaintiff should be reinstated to her full and proper benefits.

16. That the September 18, 2017, sustained 4/12/18, denial of final appeal and cessation of benefits retroactive to March 1, 2017, and continuing misstates and ignores diagnostic and examination testing and improperly interprets treating physician and medical opinions that, in fact, show difficulties and restrictions in

4

   functioning as proof of inability to perform essential duties of her or any reasonable occupation.
All five of her treating medical sources are unanimous and absolute in stating her as non-employable, as is the vocational expert. It further ignores the 70% of prior income policy requirement.

17. That the Defendants' actions are an unwarranted breach of the Plaintiff's long term disability plan; representations by Summary Plan Documents; contract; ERISA; and have continued to cause the Plaintiff great ffinancial hardship.

18. That the Plaintiff's damages are, to date, the monthly benefit after offset being $1,105.75 per month, for one month 45 days being $1,658.62, thereafter at $1,105.75 a month 17 months to date (9/24/18) being $18,797.75 additional. Her likely damages are September 24, 2018 until July 24, 2035, being 202 months = $223,361.15, for a grand total of $243,817.52.

19. That on any favorable remand or reversal, partial or full, Plaintiff should be reimbursed her attorney fees on this ERISA matter at the rate of $250 per hour from April, 2018 to conclusion of action by Western District of New York Court.

## AS AND FOR A SECOND CAUSE OF ACTION

20. Restates and reasserts ##1-19 herein.

21. Per the Contract of insurance, Ms. Kubitz has to be able to earn 70% of $47,667, or $33,300 yearly at a reasonable occupation to be ceased from her benefits before her 65th birthday.

22. After 22 ½ months of agreeing she could not do her occupation as a Financial Aid Manager at 70% of her pre-disability monthly gross, Defendants arbitrarily determined as of March 1, 2017, she could do her occupation. They did this directly contrary to findings and statements of all treating physician. And even their own physician, who never stated she could perform her Occupation.

23. Even though all five of Plaintiff's doctors confirm her disability, Defendants' denial and cessation of benefits is based largely on reports of a non-treating

physical, specifically one "Peer Review Report" of 2/6/17 by Dr. Grahan. Almost nothing in this extensive peculiar peer report contradicts the restrictions of her treating physicians. In fact, it agrees she is at maximum recovery, will not return to baseline and no significant changes are likely. "Prognosis for return to work without restrictions of poor based on her history of fusion." In no way does his report even consider an ability to earn 70% of her prior income, nor does it disagree with treating physicians, other than indicating there are no new objective herniations in addition to the many operated-on in the nine surgical procedures.

24. Prudential also did surveillance, a fact they ignore in their cessation letters. Prudential also comments on 10/7/14 findings by Defendant RIT that accommodations for own occupation were not feasible, being an effort to work 2 to 3 hours a day from home. "Surveillance video" cut-offs of benefits have been justifiably repeatedly discredited by the courts (*see, e.g.,* Clausen vs. Standard Insurance Co., 961 F. Supp. 1446 (D.C. Colo. 1997)). In the instant case, the extensive videos in fact confirm that Plaintiff's daily activities are limited to short term shopping and appointments necessary to live independently and probative of an inability to work full-time. Nothing therein contradicts her total disability from being able to do the functions of a job.

25. Defendants failed to identify any viable work at $33,300 a year gross or greater and were arbitrary and capricious and so Defendants owe Plaintiff benefits post 3/1/17 and 4/15/17 to date and continuing.

### AS AND FOR A THIRD CAUSE OF ACTION

26. Plaintiff restates and reasserts ##1-25 herein.
27. That the Defendants further are providers of a group life insurance plan and Miscellaneous benefits with waiver of benefits funding and servicing RIT Life Insurance Employee Benefit Plan, an ERISA benefit. That the Defendants denied a waiver of premium and have discontinued benefits wrongfully and that Plaintiff should be reinstated to Plan with all past due premiums waiver/reimbursement.
28. That said issue has been properly preserved and is present to this Court concurrent with the LTD issue and that per Section 502(a) of ERISA, Plaintiff

should be reinstated with premiums waived to group life insurance and all other similar ERISA benefits denied or cessated on basis of disability.

29. That, specifically while receiving LTD benefits, the Plaintiff is entitled to certain pension plan payments, and they have been discontinued. That all said benefits should be reinstated and paid retroactively to date.

**WHEREFORE,**

A. For the sum of $1,658.62, plus interest from 3/1/17 to 4/15/17, and for the sum of $1,879.75 for 4/15/17 to 9/15/18 per month to date, and for the sum of $1,105.75 per month 9/15/18 to 7/24/2035 = $223,_.00 for a total of $243,817.50 plus interest attributable to judgment;

B. For a declaratory judgment granting Plaintiff all rights and benefits under the written policy/plan and to award Plaintiff monetary judgment for all monies due and owing, with interest, and reinstatement of all benefits;

C. For a reinstatement with waiver of premium to Group Life Insurance, Employee Benefits Plan and all other ERISA benefits dependent on disability, and specifically payments of pension retroactive to 3/1/17 to date, and continuing.;

D. For attorney fees pursuant to ERISA, 29 USC Section 1132 (g)(1) at the rate of $250/hour;

E. For such other and further relief as the Court may find just and proper.

Dated:   September 15, 2018

_Lawrence J Heller_
Lawrence I. Heller, Esq.
**Attorney for Plaintiff**
**Office and P. O. Address**
1 East Main Street, Suite 950
Rochester, New York  14614
Telephone:   (585) 262-2304
Facsimile:    (585) 454-3595

STATE OF NEW YORK   )
COUNTY OF MONROE   )

  I, the undersigned, being duly sworn, depose and say: I am CATHERINE E. KUBITZ, the Plaintiff in this action; I have read the foregoing Summons and Complaint and know the contents thereof; the same are true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
**CATHERINE E. KUBITZ**

Sworn to before me this
____ day of September, 2018

_____
Notary Public

LAWRENCE I. HELLER
Notary Public, State of New York
No. 02HE4511019
Qualified in Monroe County
My Commission Expires Sept. 30, 20__